IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

MARYJO CARROZZA,         :
            :    CIVIL ACTION
            :    NO. 15-4737
       v.        :
            :
COMMISSIONER OF THE SOCIAL    :
SECURITY ADMINISTRATION,    :

O'NEILL, J.                                         July 19, 2016

## MEMORANDUM

Currently pending are plaintiff Maryjo Carrozza's objections to the Report and Recommendation of United States Magistrate Judge Timothy R. Rice.  For the reasons that follow, I will overrule plaintiff's objections and will affirm the decision of the Commissioner of Social Security.

## BACKGROUND

On November 16, 2011, plaintiff -- then fifty-one years old -- filed for Supplemental Security Income (SSI) pursuant to Title XVI of the Social Security Act, 42 U.S.C. § 1381, et seq. (R. 182–187.)[1]  Her claim alleged disability since January 1, 2003, due to post-traumatic stress disorder, asthma, fibromyalgia, clinical depression, diabetes, GERD, irritable bowel syndrome, high blood pressure, gastroparesis, two tumors on adrenal glands, thyroid disease, neuropathy in the whole body, nerve damage in finger and toes and migraines due to head injury from an assault.  (R. 79–80.)  The state agency denied plaintiff's application on March 29, 2012.  (R. 87.)  Plaintiff timely requested a hearing before an administrative law judge.  (R. 96–100.)  ALJ Jay Marku conducted an administrative hearing on October 30, 2013, during which plaintiff,

---

[1]      For ease of discussion, citations to the administrative record will be referenced as

plaintiff's brother Leonard Carrozza and a vocational expert all testified.  (R. 37-78.)  On January

14, 2014, the ALJ issued a decision deeming plaintiff "not disabled" and plaintiff filed an appeal.

(R. 16, 20–21.)  The Appeals Council denied plaintiff's request for review on June 16, 2015, (id.

at 1–3), making the ALJ's ruling the final decision of the agency.  20 C.F.R. § 416.972.

Plaintiff initiated the present civil action on August 20, 2015, alleging multiple errors by

the ALJ.  On March 14, 2016, United States Magistrate Judge Timothy R. Rice issued a Report

and Recommendation rejecting plaintiff's arguments.  Plaintiff filed objections to the R&R on

March 28, 2016, contending:  (1) the ALJ erred in failing to resolve the VE's testimonial conflict

with the Dictionary of Occupational Titles; (2) the ALJ issued a flawed credibility assessment;

(3) the ALJ erred in failing to find plaintiff's impairments severe; (4) the ALJ failed to assess the

impact of plaintiff's obesity on her other impairments and (5) the ALJ did not undertake a

function-by-function assessment of the RFC.[2]  Defendant responded to these objections on April

11, 2016.

## STANDARD OF REVIEW[3]

Judicial review of the Commissioner's decision is limited to determining whether

"substantial evidence" supports the decision.  Burnett v. Comm'r of Soc. Sec. Admin., 220 F.3d

112, 118 (3d Cir. 2000).  "Substantial evidence 'does not mean a large or considerable amount of

evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to

_____

"R. [page number]."

[2]      In the introductory portion of the objections, plaintiff also challenges the accuracy
of the Magistrate Judge's "Factual History" summary.  As this argument has no bearing on the
ultimate issue of whether the ALJ's opinion is supported by substantial evidence, I do not
separately address it.

[3]      The five-step sequential analysis for assessing a disability claim was adequately
summarized by the Magistrate Judge.  In lieu of repeating that discussion, I incorporate by

support a conclusion.'" Hartranft v. Apfel, 181 F.3d 358, 360 (3d Cir. 1999), quoting Pierce v. Underwood, 487 U.S. 552, 564–65 (1988).  When making this determination, a reviewing court may not undertake a de novo review of the Commissioner's decision and may not re-weigh the evidence of record.  Monsour Med. Ctr. v. Heckler, 806 F.2d 1185, 1190 (3d Cir. 1986).  In other words, even if the reviewing court would have decided the case differently, the Commissioner's decision must be affirmed if it is supported by substantial evidence.  Id. at 1190–91; see also Gilmore v. Barnhart, 356 F. Supp. 2d 509, 511 (E.D. Pa. 2005) (holding that the court's scope of review is "'limited to determining whether the Commissioner applied the correct legal standards and whether the record, as a whole, contains substantial evidence to support the Commissioner's findings of fact'"), quoting Schwartz v. Halter, 134 F. Supp. 2d 640, 647 (E.D. Pa. 2001).  In an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's decision] from being supported by substantial evidence." Consolo v. Fed. Maritime Comm'n, 383 U.S. 607, 620 (1966).

Where a United States Magistrate Judge has issued a report and recommendation in a social security case and a party makes a timely and specific objection to that report and recommendation, the district court is obliged to engage in de novo review of only those issues raised on objection.  28 U.S.C. § 636(b)(1); see also Sample v. Diecks, 885 F.2d 1099, 1106 n.3 (3d Cir. 1989).  For those sections of the report and recommendation to which no objection is made, the court should, as a matter of good practice, "satisfy itself that there is no clear error on the face of the record in order to accept the recommendation."  Fed. R. Civ. P. 72(b), advisory

reference that portion of the R&R into this Memorandum.

committee notes.  The court may "accept, reject, or modify, in whole or in part, the findings and recommendations" contained in the report.  28 U.S.C. § 636(b)(1).  In the exercise of sound judicial discretion, the court may also rely on the Magistrate Judge's proposed findings and recommendations.  See United v. Raddatz, 447 U.S. 667, 676 (1980).

## DISCUSSION

I.    **The Vocational Expert's Alleged Testimonial Conflict with the Dictionary of Occupational Titles**

Plaintiff's first objection concerns the ALJ's reliance on the vocational expert's testimony.  At the administrative hearing, the ALJ assessed plaintiff with a residual functional capacity of "light work involving simple, routine tasks requiring no more than reasoning level two and requiring occasional contact with the public, coworkers and supervisor, no working on assembly lines or in teams with little change in the work setting or work processes and no working at unprotected heights, around moving machinery, climbing ladders . . . or scaffolds." (R. 73.)  The VE opined that these limitations would allow plaintiff to perform the jobs of Sales Attendant (DOT # 299.677–010), Food Preparation Worker (DOT # 311.677-010) and Inspector or Checker (DOT #689.687-022).  (R. 74–75.)  The VE also clarified that her testimony was consistent with the Dictionary of Occupational Titles.  In her request for review, plaintiff argued that the VE's testimony conflicted with the DOT because the identified positions would require more than "occasional" interaction with the public as prescribed by the RFC assessment.  The Magistrate Judge found no reversible error.  Plaintiff now contends that the R&R is mistaken because all of the occupations identified by the VE are incompatible with the ALJ's RFC assessment.

The Social Security Administration has taken administrative notice of the reliability of

the job information contained in the DOT and often uses it at steps four and five of the evaluation process.  Burns v. Barnhart, 312 F.3d 113, 126 (3d Cir. 2002).  Social Security Ruling 00-4p provides that ALJs have "an affirmative responsibility to ask about any possible conflict between that VE . . . evidence and information provided in the DOT."  SSR 00-4p, 2000 WL 1898704, at *4 (Dec. 4, 2000).  If the testimony appears to conflict with the DOT, the ALJ must "elicit a reasonable explanation for the apparent conflict."  Id. at *2.  "Neither the DOT nor the VE . . . automatically 'trumps' when there is a conflict.  The adjudicator must resolve the conflict by determining if the explanation given by the VE . . . is reasonable and provides a basis for relying on the VE . . . testimony rather than on the DOT information."  Id.  Where an apparent, unresolved conflict exists about every position identified by the VE, the court generally must remand.  See Boone v. Barnhart, 353 F.3d 203, 208 (3d Cir. 2003), as amended (Dec. 18, 2003).  Nonetheless, an unexplained inconsistency between the VE's testimony and the DOT is not per se fatal to the ALJ's determination so long as substantial evidence exists in the record to support the ALJ's finding.  Rutherford v. Barnhart, 399 F.3d 546, 557 (3d Cir. 2005) (internal citations omitted).

In this case, the VE identified the job of "Food Preparation Worker," but gave a DOT number for the position of "Cafeteria Attendant."  The job description for "Cafeteria Attendant" is listed as one who

> [c]arries trays from food counters to tables for cafeteria patrons. Carries dirty dishes to kitchen.  Wipes tables and seats with dampened cloth. Sets tables with clean linens, sugar bowls, and condiments.  May wrap clean silver in napkins.  May circulate among diners and serve coffee and be designated Coffee Server, Cafeteria Or Restaurant (hotel & rest.).

DOT 311.677-010 (4th ed. rev. 1991).  The fifth digit of the title -- the "people" digit – expresses

the degree of interaction with other people required by the job.  Hackett v. Barnhart, 395 F.3d

1168, 1175 (10th Cir. 2005).  The number "7" indicates that the position requires "serving,"

which is defined as "[a]ttending to the needs or requests of people or animals or the expressed or

implicit wishes of people.  Immediate response is involved."  DOT, Appx. B, (4th ed. Rev.

1991).  Plaintiff argues "this description indicates that interaction with people is significant and

more than occasional (and plaintiff would reiterate that, to the extent common sense is relevant,

an individual whose job is to serve food to individuals in a cafeteria, will have more than

occasional contact with the public as part of that job)."  Pl.'s Objections 3.

        The definition of "Cafeteria Attendant," however, does not suggest any more than

occasional contact with the public as it mainly involves carrying trays for people, cleaning tables,

filling condiments on tables and potentially pouring people coffee.  Nothing within the definition

reflects any type of "serving" as would be typical of a waiter or waitress.  Numerous courts

considering the degree of public interaction required by the "Cafeteria Attendant" position have

agreed that it demands no more than occasional interaction with the public.  See R&R at 24

(citing multiple cases finding that the "cafeteria attendant" position in the DOT does not require

more than occasional interaction with people); see also Strickland v. Astrue, No. 10-306, 2011

WL 4048985, at *10 (M.D. Fla. Sept. 13, 2011) (noting that although "cafeteria attendant"

position required "serving," "[n]othing has been presented to the Court that suggests more than

occasional interactions are required"); Hacker v. Astrue, No. 07-1253, 2008 WL 4224952, at *5

n.1 (W.D. Okla. Sept. 10, 2008) ("[T]he Dictionary of Occupational Titles actually shows the

interaction with people to be not significant for a cafeteria worker.").  Accordingly, the VE's

testimony that plaintiff could perform this position – even when limited to no more than

occasional contact with the public, co-workers and supervisors – does not conflict with the DOT.[4]

This conclusion forecloses the need to consider a potential DOT conflict with the other occupations identified by the VE.  At step five of the sequential analysis, the Commissioner need only prove that the claimant can perform "other work."  20 C.F.R. § 416.920(f).  "Other work" consists of jobs existing in significant numbers in the national economy that the claimant can perform given his age, education, past work experience and residual functional capacity. Plummer v. Apfel, 186 F.3d 422, 428 (3d Cir. 1999).  "This Court must uphold the ALJ's findings as long as there is substantial evidence, based on the VE's testimony and the record as a whole, to support the ALJ's determination that there are a significant number of jobs in the national economy the claimant can perform."  Henderson v. Soc. Sec. Admin., 87 F. App'x. 248, 253 (3d Cir. 2004).  The regulations do not require the existence of multiple occupations.  Id. Moreover, "there is no precise estimate for what constitutes 'significant numbers' of jobs under the Social Security Act."  Young v. Astrue, 519 F. App'x 769, 772 (3d Cir. 2003) (finding that evidence of 100 jobs locally and 20,000 nationally is sufficient to support a finding that work exists in significant numbers).

In this case, the VE testified that there were 6,800 of the Cafeteria Attendant positions locally and 240,000 nationally.  (R. 75.)  This testimony constitutes substantial support for the

---

[4]        Plaintiff also objects to the Magistrate Judge's statement that plaintiff "has not shown she is actually incapable of jobs that require more than occasional contact with the public."  (R&R 25.)  I agree that the Magistrate Judge may not re-weigh the evidence and is limited to a determination of whether the ALJ's decision is supported by substantial evidence. Monsour Med. Ctr. v. Heckler, 806 F.2d 1185, 1190 (3d Cir. 1986). Nonetheless, because the VE has identified jobs that are responsive to the ALJ's hypothetical, this portion of the objection need not be discussed in greater detail.

ALJ's step five finding that plaintiff can perform jobs that exist in significant numbers in the

national economy.  Accordingly, I will overrule plaintiff's first objection.

## II.    The ALJ's Assessment of Plaintiff's Credibility

Plaintiff's second objection challenges the ALJ's credibility assessment.  At the

administrative hearing, plaintiff testified that she is unable to work due to problems with standing

and dexterity, tingling and numbness in her hands and feet, low back pain and dizziness.  (R. 26.)

She also stated that she suffers from depression and anxiety which impact her motivation and

induce panic attacks.  (R. 26.)  The ALJ assessed the credibility of these statements as follows:

> After careful consideration of the evidence, the undersigned
> finds that the claimant's medically determinable impairments
> could reasonably be expected  to cause the alleged symptoms;
> however, the claimant's statements concerning the intensity,
> persistence and limiting effects of these symptoms are not
> entirely credible for the reasons explained in this decision.  In
> terms of the medical evidence, the primary care, endocrinology,
> and neurology records indicate that the claimant recovered
> physically and cognitively following her stroke with physical,
> occupational, and speech therapy.  The records also indicate that
> she has continued to smoke despite multiple physicians advising
> her to quit due to the impact it had on her chronic conditions.  In
> addition, the nerve conduction and EMG reports revealed no
> evidence of neuropathy, radiculopathy, or other neuromuscular
> disorder and recent physical examinations have yielded minimal
> positive findings such as normal respiratory effort and gait,
> intact strength in all extremities, normal spine, and no effusion
> with normal joint range of motion.  Finally, the minimal mental
> health treatment records seem to indicate stable mental status
> examination findings with no major changes noted in the
> claimant's reports or presentation.

(R. 27.)  The ALJ then considered this medical evidence in conjunction with plaintiff's daily

activities, treatment and medication to conclude "while the clamant clearly experiences some

physical and mental symptoms, her symptoms have not risen to the level of severity required to

justify a finding of disability."  (R. 28.)  On review, the Magistrate Judge found the ALJ's

decision to be supported by substantial evidence.

Plaintiff now contends that this conclusion was flawed in three respects: (1) the ALJ and

the Magistrate Judge mischaracterized the narrative of the EMG report to find no evidence of

neurological complications from plaintiff's diabetes; (2) the Magistrate Judge engaged in post-

hoc rationalization in an attempt to rectify the ALJ's flawed credibility analysis; and (3) the

Magistrate Judge did not properly address the ALJ's misrepresentation of plaintiff's activities of

daily living.  I find no such errors.

An ALJ is required to "give serious consideration to a claimant's subjective complaints of

pain [or other symptoms], even where those complaints are not supported by objective evidence."

Mason v. Shalala, 994 F.2d 1058, 1067 (3d Cir. 1993), citing Ferguson v. Schweiker, 765 F.2d

31, 37 (3d Cir. 1985).  Objective evidence of the symptoms themselves need not exist although

there must be objective evidence of some condition that could reasonably produce them.  Green

v. Schweiker, 749 F.2d 1066, 1070-71 (3d Cir. 1984).  A claimant's symptoms may be

discredited "unless medical signs or laboratory findings show that a medically determinable

impairment(s) is present."  20 C.F.R. § 416.929(b); Hartranft v. Apfel, 181 F.3d 358, 362 (3d

Cir. 1999).  Where medical evidence supports a claimant's complaints, the "complaints should

then be given 'great weight' and may not be disregarded unless there exists contrary medical

evidence."  Mason, 994 F.2d at 1067-68 (quotations omitted).  The ALJ however "has the right,

as the fact finder, to reject partially, or even entirely, such subjective complaints if they are not

fully credible."  Weber v. Massanari, 156 F. Supp. 2d 475, 485 (E.D. Pa. 2001), citing Baerga v.

Richardson, 500 F.2d 309, 312 (3d Cir. 1974).

Under the regulations, the kinds of evidence that the ALJ must consider when assessing the credibility of an individual's statements include:  the individual's daily activity; location, duration, frequency and intensity of the individual's symptoms; factors precipitating and aggravating the symptoms; the type, dosage, effectiveness and side effects of medication taken to alleviate the symptoms; treatment, other than medication, received for relief of the symptoms; any non-treatment measures the individual uses to relieve pain or symptoms and other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms. 20 C.F.R. § 416.929(c)(3).  Moreover, the ALJ should account for the claimant's statements, appearance and demeanor; medical signs and laboratory findings; and physicians' opinions regarding the credibility and severity of plaintiff's subjective complaints.  Weber, 156 F. Supp. 2d at 485, citing SSR 96-7p, 1996 WL 374186 (July 2, 1996).  Ultimately, the ALJ's "'determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight.'"  Schwartz v. Halter, 134 F. Supp. 2d 640, 654 (E.D. Pa. 2001), quoting SSR 96-7p and Schaudeck v. Comm'r of Soc. Sec. Admin., 181 F.3d 429, 433 (3d Cir. 1999).

Under this standard, I find that none of plaintiff's challenges to either the ALJ's credibility analysis or the Magistrate Judge's affirmation of that analysis have merit.  First, plaintiff argues that the ALJ overlooked the portion of the EMG report diagnosing her with a small fiber neuropathy that could explain her alleged symptoms.  Careful review of that report, however, reveals no such diagnosis.  In October 2013, plaintiff underwent a physical

examination, nerve conduction studies and a needle EMG, all of which were normal.  The

examining doctor remarked:

> T]his was a normal study and there was no electrophysiologic
> evidence of a neuromuscular disorder.  Ms. Carrozza has no
> evidence of a large fiber diabetic polyneuropathy or focal
> neuropathy such as carpal tunnel syndrome.  It is possible that
> Ms. Carrozza has a small fiber polyneuropathy related to her
> diabetes.  Fortunately, she does not have nerve pain and
> therefore she does not need treatment with a neuropathic pain
> medication.  I explained to Ms. Carrozza that a small fiber
> polyneuropathy can result in numbness, paresthesias,
> dysesthiesias, and autonomic dysfunction, however, it should
> not result in any weakness or proprioceptive loss that would
> result in imbalance.

(R. 705.)  Contrary to plaintiff's argument, the report reflects nothing in the nerve conduction

studies or EMG to account for plaintiff's complaints of numbness and paraesthesias.  The

doctor's hypothetical speculation that plaintiff may have a small fiber neuropathy which could

potentially cause her symptoms does not constitute "objective medical evidence of some

condition that could reasonably produce pain . . ." and does not trigger the ALJ's obligation to

address contradictory evidence.  Green v. Schweiker, 749 F.2d 1066, 1071 (3d Cir. 1984); see

also Pachilis v. Barnhart, 268 F. Supp. 2d 473, 479–80 (E.D. Pa. 2003).[5]

Second, plaintiff asserts that the Magistrate Judge engaged in an "independent re-

weighing of the evidence" and an "improper post-hoc rationalization" in order to rectify the

---

[5]    The ALJ' s conclusion was further bolstered by a report from a Dr. Hutchinson to
whom plaintiff reported complaints of tingling and weakness in her legs.  (R. 719.)  Dr.
Hutchinson's physical examination was entirely normal with no positive findings.  (R. 721.)
Plaintiff argues that Dr. Hutchinson focused entirely on her lower extremities and, thus, did not
opine on any symptoms in her upper extremities.  Dr. Hutchinson's findings of no neuropathy in
plaintiff's lower extremities, however, constitutes evidence that plaintiff's complained-of
symptomology in both her upper and lower extremities was not entirely credible.

ALJ's deficient credibility analysis.[6]   This argument is also meritless.   In affirming the ALJ's

thorough credibility assessment, the Magistrate Judge remarked that the ALJ's decision was

supported by (1) the medical evidence that plaintiff recovered after her stroke, continued to

smoke against physicians' strong recommendation, had relatively normal physical examinations

and testing and maintained a stable mental health status; (2) plaintiff's multiple daily activities

and high level of independent functioning; (3) medical notations that plaintiff tried to return to

work, had a stable depressive disorder and experienced "surprisingly good" recovery from her

stroke; and (4) medical reports showing her chronic conditions had stabilized with medication

and she treated with only conservative measures.  (R&R 12–15.)  The ALJ cited to precisely the

same factors in reaching his decision that plaintiff's subjective complaints were not entirely

credible.  (R. 26–29.)  None of the reasoning offered by the Magistrate Judge constituted a post-

hoc rationalization.

> Finally, plaintiff challenges the ALJ's depiction of her activities, which stated:

> > In terms of her daily activities the claimant reported that she
> > drives a few times a week, attends to her personal care
> > independently, lives alone, and does household chores such as
> > mopping, dusting, and vacuuming.  She also reported that she
> > regularly attends religious services and orders food, as she never
> > learned to cook.  She indicated that she is okay with crowds and
> > dealing with strangers; sometimes goes shopping and does
> > laundry; and spends most of her time at home watching
> > television.  Given these admissions regarding her high level of
> > independent daily functioning, a more restrictive functional
> > assessment is not warranted.

(R. 28.)  Plaintiff argues that this description omitted her further explanations that she drives as

---

[6]     Under <u>SEC v. Chenery Corp.</u>, 318 U.S. 80 (1943), "[t]he grounds upon which an
administrative order must be judged are those upon which the record discloses that its action was
based." <u>Id.</u> at 87.

little as possible, accomplishes household chores only because she is able to take frequent breaks and attends only short religious services on an infrequent basis.  She contends that the ALJ's failure to mention her professed limitations makes it impossible for any reviewing court to determine whether the ALJ considered them.

Again I find this argument meritless.  While the ALJ did not expressly quote plaintiff's description of her activities, his summary of her activities does not mischaracterize them or attempt to portray them as more extensive than described.  The ALJ simply noted that plaintiff lived alone and was able to continue a high level of independent daily functioning which was inconsistent with a more restrictive functional assessment.  "Although certainly '[d]isability does not mean that a claimant must vegetate in a dark room excluded from all forms of human and social activity,' . . . it is nonetheless appropriate for the ALJ to consider 'the number and type of activities' in which the claimant engages."  Turby v. Barnhart, 54 F. App'x 118, 122 n.1 (3d Cir. 2002) (citations omitted).  Ultimately, the ALJ agreed that plaintiff "clearly experiences some physical and mental symptoms," but found that "her symptoms have not risen to the level of severity required to justify a finding of disability."  (R. 28.)

As a whole, I find the ALJ's credibility decision to be well supported by substantial evidence.  The ALJ determined that plaintiff's allegations of restrictions on her physical and mental functioning were partially credible as reflected by his RFC limiting her to light work, simple and routine tasks, only occasional interaction with the public, coworkers and supervisors and little change in the work setting or work processes.  Only to the extent that plaintiff described her symptoms as more work-preclusive than this RFC did the ALJ determine she was not credible -- an assessment properly based on the record and satisfactorily explained in the ALJ's

opinion.  I will therefore affirm the ALJ's credibility ruling.

## III.    The ALJ's Severity Decision at Step Two

At step two of the sequential evaluation, the ALJ declined to find plaintiff's neuropathy to be a "severe" impairment because "while [plaintiff] has reported neurological manifestations related to her diabetes, EMG and nerve conductions studies performed in October 2013 revealed no electrophysiological evidence of cervical or lumbosacral radiculopathy or plexopathy, focal neuropathy, polyneuropathy, or any other neuromuscular disorder."  (R. 23.)  As a result, the ALJ determined that plaintiff's diabetes resulted in no more than minimal limitations on her ability to perform basic work-related activities.  (R. 23.)  Plaintiff challenged this finding in her request for review and the Magistrate Judge affirmed the ALJ's determination.  Plaintiff now objects on the basis that the ALJ failed to properly consider either the neurologist's suggestion of a possible small fiber neuropathy or plaintiff's prescribed use of Gabapentin for neuropathy.

Step two of the sequential analysis places a burden on the claimant to show that her impairment is severe.  20 C.F.R. § 416.920(c).  An impairment is "severe" when it is "of a magnitude sufficient to limit significant the individual's 'physical or mental ability to do basic work activities.'"  Santise v. Schweiker, 676 F.2d 925, 927 (3d Cir. 1982) (quotations omitted).  A "severe" impairment is distinguished from "a slight abnormality," which has such a minimal effect that it would not be expected to interfere with the claimant's ability to work, regardless of her age, education or work experience.  See Bowen v. Yuckert, 482 U.S. 137, 149-51 (1987); see also 20 C.F.R. § 416.921(a).  Mere diagnoses of conditions that are stable or otherwise controlled without an accompanying showing of more than minimal functional limitations do not permit a finding of severity.  Salles v. Comm'r of Soc. Sec., 229 F.3d 140, 145 (3d Cir. 2007).

-14-

Substantial evidence supports the ALJ's characterization of plaintiff's diabetes as non-severe. Despite plaintiff's report of pain and numbness in her extremities, the record shows no evidence of neurological complications from her diabetes. The neurologist's speculation that "[i]t is possible" plaintiff has a small fiber polyneuropathy causing her numbness and paresthesia does not constitute evidence of a severe impairment. It is merely a possible explanation – unconfirmed by any objective manifestations – for plaintiff's complained-of symptomology. The same holds true for plaintiff's prescribed use of Gabapentin to treat her neuropathic pain. As aptly noted by the Magistrate Judge, the prescription itself does not constitute an objective observation, but merely shows that physicians credited plaintiff's self-reported symptoms. The ALJ was not required to do the same under the well-settled rule that a claimant's symptoms may be discredited "unless medical signs or laboratory findings show that a medically determinable impairment(s) is present." 20 C.F.R. § 416.929(b); see also SSR 96-4p, 1996 WL 374187, at *2 (July 2, 1996) ("No symptom or combination of symptoms can be the basis for a finding of disability, no matter how genuine the individual's complaints may appear to be, unless there are medical signs and laboratory findings demonstrating the existence of a medically determinable physical or mental impairment.").

Even assuming plaintiff met her burden of showing her diabetes had more than a minimal effect on her work-related activities, an error at this step is harmless as long as the ALJ finds in plaintiff's favor and proceeds on the next steps in the sequential analysis Williams v. Comm'r of Soc. Sec., No. 12-5637, 2013 WL 4500335, at *17 (D.N.J. Aug. 21, 2013), citing Salles v. Comm'r of Soc. Sec., 229 F. App'x 140, 145 n.2 (3d Cir. 2007) ("Because the ALJ found in [plaintiff's] favor at Step Two, even if he had erroneously concluded that some of her other

-15-

impairments were non-severe, any error was harmless.").  In other words, "[w]here the ALJ found that Plaintiff suffers from even one severe impairment, any failure on the ALJ's part to identify other conditions as severe does not undermine the entire analysis."  Faircloth v. Colvin, No. 12-1824, 2013 WL 3354546, at *11 (W.D. Pa. July 3, 2013).

In this case, the ALJ did not deny benefits outright at step two, but rather found that plaintiff had the severe impairments of morbid obesity, major depressive disorder and dependent personality disorder.  The ALJ then proceeded to steps three, four and five to conclude that plaintiff had the residual functional capacity to perform work existing in significant numbers in the national economy.  In doing so, the ALJ considered plaintiff's professed physical limitations and restricted her to light work.  Given this analysis, I find no reversible error.

**IV.    The ALJ's Assessment of Plaintiff's Obesity**

Plaintiff next asserts that the ALJ's consideration of her obesity was flawed.  As noted above, the ALJ determined that plaintiff's obesity was a severe impairment, but concluded

> [w]hile there is no specific listing for obesity, this impairment was considered in conjunction with claimant's other impairments as instructed by SSR 02-1p.  Specifically, there is no indication in the records that her mental health conditions have been exacerbated by her obesity, or that it has impaired her ability to ambulate effectively.

(R. 23–24.)  The Magistrate Judge found that the ALJ properly considered the impact of that obesity on her other conditions.  Plaintiff objects however that the ALJ's opinion failed to address the effect plaintiff's obesity would have on her chronic obstructive pulmonary disease (COPD) and her diabetes.

Social Security Ruling 02-1p sets forth guidance for the evaluation of obesity in a social security claim.  SSR 02-1p, 2000 WL 628049 (Sept. 12, 2002).  This ruling recognizes that

-16-

"[o]besity is a risk factor that increases an individual's chances of developing impairments in most body systems." Id. at *3.  For example,

> obesity affects the cardiovascular and respiratory systems because of the increased workload the additional body mass places on these systems. . . .  Thus, [an ALJ] may find that the combination of a pulmonary or cardiovascular impairment and obesity has signs, symptoms, and laboratory findings that are of equal medical significance to one of the respiratory or cardiovascular listings.

Id.  As there is no specific level of weight or body-mass index that equates with a "severe" or a "not severe" impairment, the ALJ must do an "individualized assessment of the impact of the obesity on an individual's functioning." Id. at *4.  Additionally, the ALJ must assess "the combined effects of obesity and other severe impairments." Rivera v. Comm'r of Soc. Sec., 320 F. App'x 128, 130 (3d Cir. 2009) (quotations omitted).  The ALJ must "consider the effects of obesity not only under the listings but also when assessing a claim at other steps of the sequential evaluation process, including when assessing an individual's residual functional capacity." SSR 02-1p, 2000 WL 628049, at *1.  "When the ALJ determines that obesity, either alone or in concert with other conditions, is not a relevant factor, there is no requirement that an ALJ repeat this determination throughout each step of the sequential analysis." Rivera, 320 F. App'x at 130.

The ALJ in this case specifically acknowledged plaintiff's obesity as a severe impairment, but found no indication that it exacerbated any of her existing conditions.  Plaintiff fails to identify any evidence in the record that the ALJ disregarded in reaching his conclusion.  Nor does plaintiff point to any medical notes, physician opinions, treatment, diagnoses or evaluations suggesting that plaintiff's obesity exacerbated either her COPD or diabetes or that she suffered additional work-related limitations due to the combination of impairments.  To the contrary, the ALJ correctly remarked that "the nerve conduction and EMG reports revealed no evidence of

-17-

neuropathy, radiculopathy, or other neuromuscular disorder and recent physical examinations have yielded minimal positive findings such as normal respiratory effort and gait, intact strength in all extremities, normal spine, and no effusion with normal joint range of motion." (R. 27.) Moreover, the ALJ relied on the treating doctors' overall assessments of plaintiff's pain level and mobility, all of which incorporated the limitations imposed by her obvious weight issues.

Plaintiff also suggests that, even if the ALJ considered her obesity, his failure to explicitly state in his opinion that obesity had no impact on her COPD or diabetes is cause for remand. The ALJ, however, need not use particular words or language or "adhere to a particular format in conducting his analysis." Diaz v. Comm'r of Soc. Sec., 577 F.3d 500, 504 (3d Cir. 2009) (quotations omitted); see also Rivera, 320 F. App'x at 130 (finding no error in ALJ's simple statement that "claimant's obesity alone or in combination with her other impairments does not cause additional or severe limitations on the claimant's functioning that would prevent him from performing routine movement and the necessary physical activities required within the work environment on a regular or continuing basis."). Although plaintiff is overweight, the medical evidence does not suggest any functional limitations from her COPD or diabetes that are worsened by her obesity. Therefore I will overrule this portion of plaintiff's objections.

**V.      The ALJ's Failure to Undertake a Function-by-Function Assessment of Plaintiffs' RFC**

Plaintiff's last objection challenges the ALJ's statement that plaintiff was capable of performing "a range of light work" with non-exertional limitations. Plaintiff asserts that the ALJ failed to perform a function-by-function analysis and instead described plaintiff's RFC solely in terms of an exertional category without addressing her limitations on sitting, standing, walking, lifting and carrying. The Magistrate Judge again found no error in the ALJ's analysis. (R&R

22–23.)  Plaintiff now asserts that the ALJ's failure to provide an explicit function-by-function analysis of plaintiff's abilities requires remand to the Commissioner.

Residual functional capacity is defined as "the most you can still do despite your limitations."  Fargnoli v. Massanari, 247 F.3d 34, 40 (3d Cir. 2001), quoting Burnett v. Comm'r of Soc. Sec., 220 F.3d 112, 121 (3d Cir. 2000) (quotations omitted); 20 C.F.R. § 416.945(a)(1). In assessing a claimant's residual functional capacity, the Commissioner is required to take into account all of her impairments, both severe and non-severe.  Id.  Additionally, the ALJ must consider all evidence of record, including both medical and non-medical evidence.  Burnett, 220 F.3d at 121-22; see also Fargnoli, 247 F.3d at 41 (holding that the Commissioner is required to consider all record evidence, including "medical records, observations made during formal medical examinations, descriptions of limitations by the claimant and others, and observations of the claimant's limitations by others").

"At step 5 of the sequential evaluation process, RFC must be expressed in terms of, or related to, the exertional categories when the adjudicator determines whether there is other work the individual can do.  However, in order for an individual to do a full range of work at a given exertional level, such as sedentary, the individual must be able to perform substantially all of the exertional and nonexertional functions required in work at that level."  SSR 96-8p, 1996 WL 374184, at *1 (July 2, 1996).  With regard to physical limitations, the ALJ must make a function-by-function assessment of the claimant's ability to sit, stand, walk, lift, carry, push, pull, reach, handle, stoop or crouch. 20 C.F.R. § 416.969a(a).  Therefore, "it is necessary to assess the individual's capacity to perform each of these functions in order to decide which exertional level is appropriate and whether the individual is capable of doing the full range of work contemplated

by the exertional level." SSR 96-8p, 1996 WL 374184, at *3. "The assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts and non-medical evidence." Rivera v. Astrue, No. 07-1912, 2008 WL 3285850, at *12 (D.N.J. Aug. 8, 2008). "An ALJ's findings pertaining to a [c]laimant's residual functional capacity must be supported by the medical evidence." Norwood v. Astrue, No. 07-4658, 2008 WL 4837489, at *15 (D.N.J. Nov. 3, 2008).

In an unpublished opinion, however, the Court of Appeals clarified that while a written function-by-function analysis in the ALJ's decision is desirable, it is not required. Bencivengo v. Comm'r of Soc. Sec., 251 F.3d 153, No. 00–1995, slip op. at 4 (3d Cir. Dec. 19, 2000) (Table). The Court noted the absence of a requirement in SSR 96-8p "to make specific, written findings on dozens of individual work function categories." Id. at 5. Instead, an ALJ need only "articulate how the evidence in the record supports the RFC determination, discuss the claimant's ability to perform sustained work-related activities, and explain the resolution of any inconsistencies in the record."[7] Id. Courts within the Third Circuit have agreed and declined to remand cases for lack of a written function-by function analysis when the ALJ's RFC determination was otherwise supported by substantial evidence. Holmes v. Comm'r of Soc. Sec. Admin., No. 13-7616, 2016 WL 944147, at *5 (E.D. Pa. March 14, 2016); White v. Astrue, No. 10-1233, 2012 WL 1555399, at *9 (E.D. Pa. Jan. 24, 2012); Long v. Astrue, No. 10-2828, 2011 WL 721518, at *2 (E.D. Pa. Feb. 23, 2011); Gaul v. Barnhart, No. 07-351, 2008 WL 4082265, at

---

[7] Plaintiff argues that the facts of this case are distinguishable from Bencivengo, as the ALJ here omitted consideration of substantial contradictory evidence of record. Aside from the singular notation from neurologist's report – an issue discussed in great detail above – plaintiff does not identify any other "substantial contradictory evidence of record" ignored by the ALJ.

*6-7 (E.D. Pa. Aug. 25, 2008); <u>Adams v. Barnhart</u>, No. 02-2365, 2004 WL 632704, at *2 (E.D. Pa. Jan. 29, 2004).

In this case, the ALJ did not engage in an explicit function-by-function assessment of plaintiff's abilities.  Nonetheless, having reviewed the ALJ's determination, I am satisfied that the requirements of SSR 96–8p have been met and the RFC accurately reflects the evidence of record.  The ALJ explained in his opinion:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a range of light work[8] as defined in 20 C.F.R. 416.967(b).  Specifically, she can perform simple and routine tasks requiring no more than reasoning level two.  In addition, the work must require only occasional interaction with the public, coworkers, and supervisors, with no assembly line or team work, and little change in the work setting or work processes.  Finally, the work must not involve unprotected heights, moving machinery, or climbing ladders or scaffolds.

(R. 25.)  In reaching this conclusion, the ALJ reviewed both the record medical evidence and plaintiff's reports of activities of daily living and offered a detailed summary over the course of five pages in his written opinion.  He noted that plaintiff maintained a high level of independent daily functioning, including cleaning, shopping, laundry and attending religious services.  He

---

[8]      "Light work" as defined in the referenced 20 C.F.R. § 416.967(b),

> involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.  To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.

20 C.F.R. § 416.967(b).

also engaged in a thorough review of the medical evidence and remarked that plaintiff had no evidence of neuropathy or radiculopathy.  During the administrative hearing, the ALJ also specifically asked plaintiff about her ability to stand, walk, sit, stoop and squat, but found many of her alleged limitations not credible.[9]  (R. 55–56.); see Garrett v. Comm'r of Soc. Sec., 274 F. App'x 159, 164 (3d Cir. 2008) (rejecting allegation that ALJ failed to perform function-by-function analysis where the ALJ specifically questioned plaintiff about sitting and standing during prior jobs).  The ALJ additionally took into account the state agency medical consultant's opinion that plaintiff could perform a range of work at the medium exertional level, but found that it too was not fully credible.[10]  (R. 29.)  Ultimately, the ALJ adequately complied with social security regulations by articulating both the evidence supportive of his RFC decision and the absence of any contrary evidence that plaintiff was precluded from light work.  I will therefore overrule this objection.

## CONCLUSION

In light of the foregoing, I will deny plaintiff's objections to the Report and Recommendation.  The ALJ reviewed the relevant medical records, plaintiff's testimony and the report of the state agency consultant before reaching a finding of no disability.  Having had the benefit of this opinion, the Magistrate Judge's comprehensive Report and Recommendation and my own thorough review of the record, I find the ALJ's decision to be without legal error and

---

[9]      "Preparing a function-by-function analysis for medical conditions or impairments that the ALJ found neither credible nor supported by the record is unnecessary."  Bayliss v. Barnhart, 427 F.3d 1211, 1217 (9th Cir. 2005).

[10]      Plaintiff argues that the State Agency Medical Consultant was not credible because his opinion was rendered prior to the submission of over 300 pages of medical records. The ALJ apparently acknowledged this fact by finding that plaintiff was limited to light, not medium, exertional work.

well supported by substantial evidence.

An appropriate Order follows.